Douglas P. Desjardins
CLAPP, DESJARDINS & ELY, PLLC
444 North Capitol Street, NW
Hall of the States, Suite 828
Washington, D.C. 20001
(202) 638-5300/Facsimile (202) 393-1725
dpd@cdelaw.net

Robert B. Hopkins, P.C., Bar No.: 73143
LANDYE BENNETT BLUMSTEIN LLP
3500 Wells Fargo Center
1300 SW Fifth Avenue
Portland, OR 97201
(503) 224-4100/Facsimile (503) 224-4133
rhopkins@landye-bennett.com

Of Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LAURIE JONES, individually, and as Personal Representative of the ESTATE OF CHRISTOPHER JONES, deceased, | |
| Plaintiff, | |
| vs. | |
| CIRRUS DESIGN CORPORATION and AVIDYNE CORPORATION, | Case No. CV 06-1656 ST |
| Defendants. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANT AVIDYNE CORPORATION FOR SPOLIATION OF EVIDENCE** |
| CIRRUS DESIGN CORPORATION, | |
| Third-Party Plaintiff, | |
| vs. | |
| JENNIFER S. LINCK or JANE DOE or JOHN DOE, who may be appointed as personal representative of the Estate of PAUL SCHIOLER-LINCK, | |
| Third-Party Defendant. | |
| Defendants. | |

Page i  - PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (facsimile)

*502370.doc.12502-001*

## TABLE OF CONTENTS

Page

BACKGROUND FACTS ...................................................................................................2

    Avidyne Protocol for Examination of PFD ............................................................2

    Examination of the PFD at Avidyne Facility Using Avidyne Personnel ..........................4

    Spoliation of the PFD Evidence by Avidyne ...........................................................5

    Significance of Disconnected J1/PI Connector of the PFD ...................................8

ARGUMENT ......................................................................................................................11

    I.  Applicable Law Re:  Spoliation ............................................................11

    II.  Avidyne is Responsible for the Spolation of the PFD ...........................15

    III.  Dismissal of Avidyne's Defenses to Liability Issues is the Appropriate
        Sanction for its Spoliation of the PFD.........................................................16

    IV.  In the Alternative, the Lesser Sanctions Requested by Plaintiff Should be
        Imposed...............................................................................................21

    V.  Plaintiff Should be Awarded Attorneys' Fees ...................................23

CONCLUSION ...................................................................................................................24

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503-224-4100
503-224-4133 (facsimile)

502370.doc.12502-001

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Advantacare Health Partners, L.P. v. Access IV,* 2004 WL 1837997
(N.D. Cal. 2004)................................................................................12, 13, 14, 16

*Akiona v. United States*, 938 F.2d 158 (9th Cir. 1991)......................................13

*Allstate Insurance Company v. Sunbeam Corporation*, 53 F.3d 804 (7th Cir. 1995) ...................18

*Atlantic Recording Corporation v. Howell*, 2008 WL 4080008 (D. Ariz. 2008).........................17

*Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61 (2d Cir. 1981) .....................................16

*Bayoil, S.A. v. Polembros Shipping Ltd.,* 196 F.R.D. 479 (S.D. Tex. 2000) ..........................13, 21

*BTO Logging, Inc. v. Deere & Co.*, 174 F.R.D. 690 (D. Or. 1997).....................................11, 22

*Chambers v. NASCO, Inc.*, 501 U.S. 32 ........................................................11, 13, 16

*Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, 2009 WL 1949124
(N.D. Cal. July 2, 2009)...................................................................12, 22, 23

*Fire Ins. Exch. v. Zenith Radio Corp.*, 747 P.2d 911 (Nev. 1987) ..................................21

*Flury v. Daimler Chrysler Corporation*, 427 F.3d 939 (11th Cir. 2005) ..............................14, 18

*Glover v. BIC Corp.*, 6 F.3d 1318 (9th Cir. 1993)...................................................11, 13, 23

*Kirkland v. New York City Housing Authority*, 236 A.D. 2d 170, 666 N.Y.S. 2d 609
(N.Y. A.D. 1 Dept. 1997)..................................................................................13

*Konrath v. Amphitheater Unified School Dist. No. 10*, 2007 WL 2809026 ..............................24

*Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006) ..............................................16

*Morocco v. General Motors Corp.*, 966 F.2d 220 (7th Cir. 1992) ....................................21

*Nally v. Volkswagen of America*, 405 Mass. 191, 539 N.E. 2d 1017 (1989)...........................13

*National Grange Mutual Insurance Co. v. Hearth & Home, Inc.*,
2006 WL 5157694 (N.D. Ga. 2006) ..........................................................14, 15, 18, 22

*Pirv v. Glock, Inc.*, 2009 WL 54466 (D. Or. 2009). ...............................................11

*Professional Seminar Consultants, Inc. v. Sino American Technology Exchange
Council, Inc.*, 727 F.2d 1470 (9th Cir. 1984)......................................................16

**Page**

*Quaglietta v. Nissan Motor Co., Ltd.*, 2000 WL 1306791 (D. N.J.) ............................................11

*R.A. Siegel Company v. Bowen*, 539 S.E.2d 873 (Ga. 2000)..........................................................22

*Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 2009 WL 1258970
(N.D. Cal. 2009)...........................................................................................11, 12, 13, 16, 23

*Shepherd v. American Broadcasting Co. Inc.,* 62 F.3d 1469 (D.C. Cir. 1995) ......................13, 21

*Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001)....................................................11

*State Farm Fire and Cas Co. v. Broan Mfg. Co., Inc.*, 523 F. Supp. 2d 992 (D. Ariz. 2007).......16

*State Farm Fire & Cas. Co. v. Frigidaire*, 146 F.R.D. 160 (N.D. Ill. 1992)...........................13, 18

*Unigard Sec. Ins. Co. v. Lakewood Eng.'g. & Mfg. Corp.*, 982 F.2d 363
(9th Cir. 1992)...............................................................................................................11, 13, 14,21

*Washington Alder LLC v. Weyerhaeuser Co.*, 2004 WL 4076674 (D. Or. 2004) .........................12

*Wm. T. Thompson Co. v. General Nutrition Corp., Inc.,* 594 F. Supp. 1443
(C.D. Cal. 1984)......................................................................................................................16, 19

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

502370.doc.12502-001

Plaintiff submits this Memorandum in support of her Motion for Sanctions Against Defendant Avidyne Corporation for Spoliation of Evidence.

This Motion is based on the fact that, while in the possession and custody of defendant Avidyne Corporation ("Avidyne"), while this litigation was pending and without the consent or knowledge of plaintiff or approval of the Court, Avidyne altered the condition of the primary flight display ("PFD") from the subject aircraft, spoiling the evidence and preventing plaintiff and her experts from completing examination of, testing of, and presentation to the jury of the true condition of the subject PFD as it was found post-crash before its alteration by Avidyne.

From as early as November 2006, when plaintiff first served Avidyne with this lawsuit, Avidyne was on notice and aware that plaintiff contended that the PFD as designed, manufactured and sold by Avidyne was defective by design and/or manufacture which was a contributing cause of the subject crash and the death of plaintiff's decedent. Paragraph 30 of the Complaint referred to the fact that a Special Airworthiness Information Bulletin had been issued by the FAA subsequent to the crash reporting that defects in Avidyne's PFDs of the same design as on the subject aircraft caused misleading pitch, roll, and heading information. Paragraph 53 of the Complaint alleged that: "A substantial factor in causing the crash of the aircraft and resultant death of decedent and damages to plaintiff was that the primary flight display in the aircraft as sold by Avidyne was in a defective condition unreasonably dangerous to the user" in that it was "defectively designed," "defectively manufactured," and/or "inadequate warnings and/or instructions were provided." Complaint, ¶¶ 30 and 53.

As discussed further below, the spoliation of the evidence in the instant case is particularly significant because the specific component of the PFD that was altered, referred to as the J1/PI connector, had been identified previously by Avidyne as a likely cause of PFD problems, and had been found by Avidyne in at least two instances to have been mismanufactured by leaving its J1/P1 disconnected. Avidyne itself acknowledged the danger posed by a malfunctioning PFD when it, after the subject January 20, 2005 crash, issued a

Page 1 -   PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

Service Alert warning that: "full or partial failure of the PFD can lead to spatial disorientation of the pilot and subsequent loss of aircraft control. This could result in an accident causing death, serious bodily injury or property damage." Avidyne's Service Alert SA-05-001, October 17, 2005.

As discussed herein, because of the spoliation of the evidence by defendant Avidyne Corporation, plaintiff's Motion for Sanctions should be granted.


## BACKGROUND FACTS

**Avidyne Protocol for Examination of PFD.** As attested to in the Affidavit of Douglas Desjardins ("Desjardins Aff.") filed herewith, by September of 2007 the wreckage from the subject crash had been made available for initial inspection by all the parties and plaintiff had requested the opportunity to conduct more thorough examination of the PFD. Mitch Kallett of Kern and Wooley, then counsel for Avidyne, who had prior experience from other litigation involving contentions of defects in the PFDs of the same model which it designed, manufactured and sold, responded that Avidyne wanted to draft a protocol for any such inspection and promised to provide that protocol promptly for review by the other parties. By the end of October 2007, Avidyne still had not submitted its proposed protocol, which prompted plaintiff to request and obtain (with the consent of the remaining parties) an extension of case deadlines. Desjardins Affidavit, ¶¶ 2-4; Court Order of November 1, 2007.

On October 29, 2007, plaintiff's counsel was advised that Avidyne's counsel, Kern & Wooley, had withdrawn as Avidyne's counsel. Approximately a week later, plaintiff's counsel was advised that the Philadelphia law firm of Cozen & O'Connor now represented Avidyne in this matter. Plaintiff again requested that the Avidyne inspection protocol be provided, and on December 19, 2007 was informed by Avidyne's new counsel that they were "trying to get an idea of what was found in the wreckage inspection so that we can determine what info would even be on the parts that were found. Once we determine that, assuming there is data to be had,

Page 2 -  PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (Facsimile)

502370.DOC.12502-001

we will put together a draft protocol." Desjardins Aff. ¶¶ 5-6.  Plaintiff's counsel responded by e-mail dated December 20, 2007 saying: "We really need to get moving on this.  I know it's the holidays, but we have been patiently waiting since September to get a protocol . . . .  In our conversation on Monday, you suggested that Avidyne could get this done in January.  If we are still on that time table, I can live with that – but if we are not then, then I will have some serious concerns." *Id.*, ¶ 7.

The delay in receiving the protocol was raised with the Court at a hearing held on January 3, 2008, and the Court at that hearing ordered that Avidyne "shall provide the other parties with a protocol for testing that equipment on or before January 15 and should complete testing of that equipment on or before January 31, 2008."  On January 15, 2008, Avidyne finally provided its draft protocol, but provided no date for the inspection.  In response to a January 23, 2008 e-mail from plaintiff's counsel for information as to when the inspection could be done, Avidyne's counsel responded that it may be difficult to get it done by the end of January, and asked if sometime after January 31 would be acceptable.  Plaintiff's counsel responded that it would be, but a further extension of the discovery deadlines may be needed.  By e-mail of January 28, Avidyne indicated sometime during the week of February 7 should work, but in the end the inspection was delayed until February 26, 2008.  Desjardins Aff. ¶¶ 8-10.

From the earliest discussions wherein Avidyne's counsel indicated that Avidyne would draft the protocol, Avidyne advocated that the testing should be done at one of its own facilities, located either in Boulder, Colorado or in Melbourne, Florida, because according to Avidyne it had the most suitable facilities and personnel qualified and capable of conducting appropriate examination of the PFD.  Desjardins Aff. ¶ 10.  Consistent with this position, the examination was conducted at Avidyne's facility in Melbourne, Florida.  With respect to the PFD, Avidyne specified in the protocol that a component of the PFD called the Inertial Reference Unit ("IRU") was to be located, its condition assessed, and desired testing and inspection be performed.  It also specified that: "Trained personnel should remove the IRU case as improper removal could

Page 3 -   PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

502370.DOC.12502-001

damage the relevant components" and "trained personnel should open the IRU and probe for appropriate conductivity as a pre-powered-up test." It was understood that the only "trained personnel" being referred to as sufficiently trained were Avidyne's own employees who would be in attendance at the Melbourne facility. Desjardins Aff. ¶¶ 11-12.

**Examination of the PFD at Avidyne Facility Using Avidyne Personnel.** At the February 26, 2008 examination at the Avidyne facility in Melbourne, Florida, the "trained personnel" made available to perform the work specified in the protocol was an Avidyne employee named Kevin Flaherty. Also attending the examination were Avidyne's attorney Evan Caplan, plaintiff's attorney Douglas Desjardins and his retained expert John Bloomfield[1], Cirrus' attorney Oliver Biersdorf, and defendant Garmin USA, Inc.'s attorney Jonathan Hoffman. Desjardins Aff. ¶ 12-13.

From discovery conducted subsequently, plaintiff has learned that Mr. Flaherty was one of the members of Avidyne's Tiger Team formed to investigate the problems with malfunctioning PFDs which prompted the issuance of the aforementioned FAA Airworthiness Directive and Avidyne Service Alert, and which concluded that a disconnected J1/P1 connector could be a cause of PFD malfunction. Desjardins Aff. ¶¶ 14-15. Mr. Flaherty also was aware of the J1/P1 connector being a potentially critical component in the product liability litigation context, as he had previously attended the inspection of J1/P1 connectors in the same two previous crash cases (*Ballard* and *Jacoby*) Mr. Bloomfield was involved in – and in the *Ballard* case the J1/P1 connector was found disconnected and was a central issue. Bloomfield Aff. ¶¶ 5, 10 and 17. Consistent with the protocol drafted by Avidyne and agreed to by plaintiff and the

---

[1]     John Bloomfield has an engineering degree from Georgia Institute of Technology, and has extensive experience in avionics and aircraft electrical systems. From his previous work on two other airplane crash cases involving suspected Avidyne PFD failures (*Ballard v. Cirrus Design Corp., et al.*, Pa. Com. Pl. No. 0605009, and *Jacoby v. Avidyne Corp.*, E.D. Va. Civ. No. 08-00055), he had learned of the history of problems with Avidyne PFDs and of Avidyne's determination that a disconnected J1/P1 connector in the IRU could cause PFD malfunction. Affidavit of John Bloomfield ("Bloomfield Aff."). ¶¶ 1, 5, 10.

Page 4 -    PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

other parties, Mr. Flaherty was the only person permitted to handle and disassemble the PFD from the subject wreckage at the inspection.  Desjardins Aff. ¶ 12; Bloomfield Aff. ¶¶ 17, 21.

**Spoliation of the PFD Evidence by Avidyne.**  At the February 26, 2008 inspection, Mr. Flaherty first proceeded with the protocol work specified for components other than the PFD, including inspection of the multi function display ("MFD") – during which it was determined that the flash memory card of the MFD was not present.  Mr. Flaherty speculated that the memory card likely was still at the crash site.[2]  Desjardins Aff. ¶ 16.

Attention then was turned to the PFD.  After unpackaging and visual inspection of the external condition of the PFD, Mr. Flaherty proceeded with its disassembly sufficiently to locate and extract the Inertial Reference Unit ("IRU") as called for in the protocol.  Bloomfield Aff. ¶ 22; Desjardins Aff. ¶ 17.  When the IRU was extracted and its cover removed to expose its internal contents, Mr. Bloomfield immediately noticed that one side of the J1/P1 connector was

_____

[2]    Snowfalls in the mountains prevented a search for the flash card at the crash site until the summer of 2008.  However, in the meantime, during a further inspection of the wreckage at its storage location in Redmond, Oregon on June 13, 2008, the one and one-half inch square and one-eighth of an inch thick memory chip was found loose in the wreckage.  A protocol was agreed to on July 3 for examination of the memory chip, but the first available date when all the parties could assemble for that inspection was August 7, 2008.  However, at that August 7 inspection, Avidyne indicated a specialized laboratory would have to be located and arranged for in order to retrieve data from the damaged card.  Avidyne volunteered that it would identify such a laboratory and available dates.  Despite repeated inquiries of Avidyne by plaintiff's counsel, and Avidyne's repeated assurances it was still in the process of locating a laboratory, by October 10, 2008, Avidyne still had not provided such a laboratory – which resulted in plaintiff then seeking a further extension of applicable case deadlines.  Desjardins Aff. ¶ 30.  By Order dated October 15, 2008, this Court extended the factual discovery deadline to February 2, 2009, expert reports to subsequent dates, and dispositive motions by July 31, 2009.

A further complication was that the MFD memory chip was sufficiently damaged that Avidyne reported it would be unable to recover its data.  However, through the expertise and efforts of Mr. Bloomfield, eventually the card was made sufficiently functional that Avidyne was able in November 2008, to recover its data at Avidyne's Melbourne, Florida facility.  Bloomfield Aff. ¶¶ 18-19.  This recovered data further supported opinions that the malfunctioning PFD was the cause of the crash according to plaintiff's expert Donald Sommer, because the data reflected that the engines appeared to be operating normally and other relevant systems also appeared to be functioning as intended.  Deposition of Donald Sommer ("Sommer Dep"), pp. 165-166, attached to Desjardins Aff. as Ex. 10.  The recovered MFD memory chip data also showed a reduction in fuel flow and manifold pressure consistent with the descent of the aircraft just prior to its ground impact.  Sommer Dep, p. 134.  Unfortunately, the memory card does not provide data for the seconds prior to impact or the impact itself.  Affidavit of Donald Sommer ("Sommer Aff.") filed herewith, Ex. D, p. 3.

Page 5 -   PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224.4133 (facsimile)

502370.DOC.12502-001

ajar and canted, not properly connected and plugged in. Bloomfield Aff. ¶ 23. Mr. Bloomfield documented that condition as best he could with photographs. *Id.,* ¶ 23. Soon thereafter, while neither Mr. Bloomfield nor Mr. Desjardins was watching and without notifying them, Mr. Flaherty took the IRU from the inspection area to a different room. Bloomfield Aff. ¶ 24; Desjardins Aff. ¶ 17. As Mr. Flaherty returned to the inspection premises after approximately 20 minutes, Mr. Bloomfield first realized that Mr. Flaherty had taken possession of the IRU to a different room outside the presence and view of plaintiff's counsel and Mr. Bloomfield and that Mr. Flaherty was now returning it. Bloomfield Aff. ¶¶ 23-25. Mr. Flaherty also was carrying with him a sheet of paper which he said contained data he had just downloaded from the IRU onto his computer in the other room. Bloomfield Aff. ¶¶ 24-25.

Mr. Flaherty then proceeded to begin to bag up the IRU unit, at which point Mr. Bloomfield asked Mr. Flaherty to stop and indicated Mr. Bloomfield would like to have another look at the IRU unit. Bloomfield Aff. ¶ 25. Upon then viewing the unit again at that point, Mr. Bloomfield first noticed that the J1/P1 connector was now no longer ajar, canted or disconnected – and instead, appeared to be fully plugged in – which would not have occurred without someone purposely and actively doing so, much like plugging a light cord into an electrical socket. Bloomfield Aff. ¶¶ 25, 29. Mr. Bloomfield then made a point of photographing this altered condition. Bloomfield Aff. ¶ 25.

Comparison photographs of the pre- and post- alteration position of the J1/P1 connector are set forth below:

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (facsimile)

502370.DOC.12502-001



*Pre-Alteration (Close-up of Bloomfield Photo 417)*



*Post-Alteration (Close-up of Bloomfield Photo 465)*



*Pre-Alteration (Close-up of Bloomfield Photo 414)*



*Post-Alteration (Close-up of Bloomfield Photo 466)*

The photographs on the left are close-ups of Mr. Bloomfield's photographs 417 and 414, and are of the position of the J1/P1 connector in its canted, disconnected state prior to Mr. Flaherty removing it to a different room. Bloomfield Affidavit ¶¶ 23, 25, and 29. The photographs on the right are close-ups of Mr. Bloomfield's photographs 465 and 466, and are of the J1/P1 connector in its uncanted, connected position after the IRU was returned by Mr. Flaherty. *Id.*, ¶ 29.

Neither Mr. Flaherty nor Avidyne's counsel provided any information or explanation for this alteration of the J1/P1 connector, even though its changed condition would have been at least as apparent to them as it was to Mr. Bloomfield whose photos clearly document it. Bloomfield Aff. ¶ 36; Desjardins Aff. ¶ 18. Avidyne's own expert, James Knox, as well as plaintiff's other

Page 7 -   PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

502370.DOC.12502-001

expert Don Sommer, agree that from review of the photographs the J1/P1 connector was altered from its canted state to its fully connected state while being handled or under the custody of Mr. Flaherty at the Avidyne facility.    Desjardins Aff. ¶ 19, Ex. 7 (Knox Deposition, pp. 118-119); Sommer Aff. ¶¶ 6-8.

**Significance of Disconnected J1/P1 Connector of the PFD**.    The significance of a disconnected J1/P1 connector became apparent to plaintiff's counsel from depositions of Avidyne personnel, Steve Jacobson and Fred Barber, taken on December 10, 2008.  Desjardins Aff. ¶ 20.  Shortly before the December 10, 2008 depositions, Avidyne finally produced some, but not all, of the relevant documents which plaintiff had requested.  The balance and bulk of the documents were not produced until 2009, after plaintiff brought a motion to compel against Avidyne.  Desjardins Aff. ¶ 20.

In his deposition, Avidyne's Steve Jacobson (who at the time was Vice-President of Project Development, had run the original PFD development group of Avidyne, and was a member of Avidyne's Failure Reporting and Corrective Action System Group), explained that Avidyne set up a group of experts in its company which it called the PFD "Tiger Team" on the very same day in September 2005 when Mr. Jacobson first saw a report of an aircraft experiencing a malfunctioning PFD showing an attitude rollover.  Desjardins Aff. ¶ 21, Ex. 8. (Deposition of Steve Jacobson ("Jacobson Dep"), pp. 5-8).  As Mr. Jacobson put it, the report of the attitude rollover was to him a "red alert," warranting the establishment of the Tiger Team. *Id.*, p. 8.  During its investigation, the Tiger Team found more PFD malfunctions. *Id.,* pp. 28-29. Mr. Jacobson could not recall whether or not the Tiger Team ever determined what the actual causes of any of the reported PFD failures were.  *Id.*, p. 29.  However, he confirmed that the Tiger Team determined that there were four possible causes of the PFD malfunctions, one of which was loose connection of the J1/P1 connector.  *Id.*, pp. 12-13.[3]

---

[3]  "J1/P1" connection refers to a male and female plug-like assembly between one-half of the IRU's 12-pin connector called the J1 ("J" stands for jack) and the other half called the P1

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

502370.DOC.12502-001

Avidyne's Frederic Barber (formerly Director of Software Engineering and now holding title of Director of Certification) also confirmed that Avidyne in a short period of time experienced multiple occurrences of PFD malfunctions. Desjardins Aff. ¶ 23, Ex. 9. (Barber Dep, pp. 10, 24-27). He too confirmed that the Tiger Team identified faulty J1/PI connections "as one of the potential causes of the erroneous attitude indications." *Id.*, 56, 65. It was of sufficient concern that Avidyne – to address the "potential for the connector either becoming dislodged as a result of manufacturing or service operations" – thereafter implemented a corrective measure of applying "adhesive to that connector to prevent its becoming dislodged." *Id.*, p. 54.

Mr. Jacobson and Mr. Barber also said that engineering bench experiments were conducted by Avidyne involving disconnecting or loosening the P1/JI connection which "confirmed . . . that disconnection or partial disconnection at that P1/JI interface could cause erroneous attitude indications." Barber Dep., pp. 65-66, 88; Jacobson Dep., pp. 18-20. Mr. Jacobson indicated Avidyne did not quantify "with extreme accuracy" the amount of disconnection or separation of the P1/JI required to cause erroneous indications on the PFD screen, nor did Avidyne retain records of the experiments – but he recalled that there was a "loose range" between "barely touching" and "completely separated" where "we were able to get a depiction of a anomalous attitude on a PFD display," and "an attitude that was not depicting what the IRU was actually sensing." *Id.*, pp. 18-20. He observed the screen erroneously showing "a rapidly rolling indication" when it should have shown straight and level – but the correlation between whether it depicted rolling left or right to how the J1 and P1 were connected was "inconclusive." *Id.*, pp. 20 and 30.

Both Mr. Jacobson and Mr. Barber also explained that in an effort to determine whether faulty connections were occurring during the manufacturing process, some IRUs (Mr. Jacobson said two were picked) were randomly selected and x-rayed – and they were found not to have

――――――――――――― (Cont.)
("P" stands for plug) that is seated together in the IRU manufacturing process. Desjardins Aff.

Page 9 -   PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (facsimile)

502370.DOC.12502-001

been properly connected/seated.    Barber Dep., pp. 65-66; Jacobson Dep., pp. 15-18.    As Mr. Barber said: "We regarded this as an undesirable circumstance and decided to apply adhesive to prevent the circumstance from arising in the future." *Id.* at 66.[4]

Mr. Barber confirmed that it was felt that the PFD malfunctions were sufficiently significant that Mr. Barber sent a letter to the FAA dated September 30, 2005 which states: "We recommend that until further notice flight in instrument meteorological conditions or any other circumstances in which visual horizon reference cannot be reliably maintained should be discontinued." *Id.*, pp. 25-29.    Just days later, while Mr. Barber was away on vacation, his supervisor inexplicably sent another letter to the FAA retracting Avidyne's recommendation for this safety restriction. *Id.,* pp. 26, 34-39.    Avidyne nevertheless issued an October 17, 2005

---

———————————————— (Cont.)

¶ 15, Ex. 9 (Deposition of Fred Barber (Barber Dep"), pp. 54-55) and Bloomfield Aff. ¶ 8.

[4] Unfortunately this Avidyne corrective measure and the Tiger Team formation occurred long after the January 20, 2005 crash that killed plaintiff's decedent. Interestingly, both the subject PFD and its IRU had a history of being repaired, overhauled or "reconditioned" by Avidyne. Avidyne's records show that the PFD on the subject aircraft when it crashed had previously been overhauled by Avidyne, and installed in the aircraft as a replacement for the PFD originally installed. In August or September of 2003 when the subject PFD was either manufactured or re-worked, an IRU bearing serial number 645 was installed in the unit. By October of 2003, the PFD had been returned to Avidyne because of a "Squirrly [sic] Horizon." The PFD was returned to Avidyne by Cirrus on October 16, 2003. The documentation from Avidyne shows that the manufacturer replaced the IRU with one bearing serial number 296. Once the repair was complete, Avidyne apparently shipped the unit to Wings Aloft in Seattle for installation into the aircraft that would eventually be purchased by plaintiff's decedent's company, Son Rise Development, Inc.

IRU 296 also appears to have been repaired by Avidyne prior to being installed in the accident aircraft. When the IRU was manufactured the Z accelerometer was listed as "non-functioning." *Id.*  A week later the Y accelerometer was also replaced. From the data extracted from the IRU at the February 26, 2008 inspection it appears that the IRU 296 was placed in service sometime after May 5, 2003 into a PFD bearing serial number D1147 and installed in an aircraft. On September 27, 2003 the IRU apparently failed in PFD. The unit was then sent to Avidyne's Boulder facility where it was reconditioned and placed back into service on October 16, 2003. On October 16, 2003 Avidyne apparently "Reconditioned [the] Unit." The digital log on board the IRU shows that it was put through a gimbal calibration on October 16, 2003. The next time the IRU was inspected was at the inspection of the PFD on February 26, 2008 in the instant case. When the IRU was removed from the PFD at the February 26, 2008 inspection a sticker stating that the unit was "RECONDITIONED" was clearly visible on the IRU. Desjardins Aff. ¶ 32.

Page 10 - PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

502370.DOC.12502-001

Service Alert warning that "full or partial failure of the PFD can lead to spatial disorientation of the pilot and subsequent loss of aircraft control. This can result in an accident causing death . . . ." The same warning was issued again in Avidyne's February 12, 2008 Service Alert SA-08-001.

## ARGUMENT

As discussed below, sanctions are fully justified under the applicable law and facts for Avidyne's spoliation of the PFD.

## I.     Applicable Law Re: Spoliation

Federal trial courts have inherent discretionary power to sanction litigants for spoliation of evidence. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *BTO Logging, Inc. v. Deere & Co.*, 174 F.R.D. 690, 692-693 (D. Or. 1997); *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 2009 WL 1258970 at *5 (N.D. Cal. 2009) ("District courts may impose sanctions as part of their inherent power 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *see also Unigard Sec. Ins. Co. v. Lakewood Eng.'g. & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992)."). As a discretionary power, the district court's exercise of that power is reviewable only for abuse of discretion. *Unigard*, 982 F.2d at 367. The Ninth Circuit applies federal law to the imposition of sanctions for spoliation of evidence when the federal court exercises diversity jurisdiction. *Unigard*, 982 F.2d at 366; *Pirv v. Glock, Inc.*, 2009 WL 54466 at n. 2 (D. Or. 2009).

Spoliation is the destruction of, material alteration of, or failure to preserve relevant evidence in pending or reasonably foreseeable litigation. *See Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001); *Quaglietta v. Nissan Motor Co., Ltd.*, 2000 WL 1306791 at *1, *2 (D. N.J.), aff'd 281 F.3rd 223 (3.d Cir. 2002). Evidence is relevant for spoliation

Page 11 - PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

502370.DOC.12502-001

purposes if a reasonable trier of fact could find that it would support a claim or defense. *Washington Alder LLC v. Weyerhaeuser Co.*, 2004 WL 4076674 at *1, *2 (D. Or. 2004).

A showing of "bad faith" is not required to impose sanctions for spoliation. As Judge Panner explained:

> "Bad faith" is a consideration in deciding whether to impose sanctions, though not a prerequisite. "Surely a finding of bad faith will suffice, but so will simple notice of 'potential relevance to the litigation.' *Glover*, 6 F.3d at 1329. *See also Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) ("culpable state of mind" requirement satisfied by a showing that failure to produce the evidence was either knowing or negligent). The rationale for allowing sanctions even when the destruction was merely negligent is that "each party should bear the risk of its own negligence." *Id.* "It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss." *Id.* (citations omitted).

*Washington Alder, supra* at *1. *Also see Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, 2009 WL 1949124 (N.D. Cal. July 2, 2009) at *9 ("Court need not make a finding of bad faith before imposing corrective sanctions . . . . Destruction of evidence, however, qualifies as bad faith when the destroying party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.' (citation omitted)."). And "[i]n the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it. [citations omitted]." *Advantacare Health Partners, L.P. v. Access IV,* 2004 WL 1837997 (N.D. Cal. 2004) at *6.

The Court may sanction a party for spoliation of evidence in at least four ways that are relevant to the case at bar. First, a court may enter a default judgment or dismissal order, dismissing the defenses or claims of the party responsible for the spoliation. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) ("Outright dismissal . . . is a particularly severe sanction, yet it is within the court's discretion."); *Realnetworks, Inc. v. DVD*, *supra*, 2009 WL 1258970 at *5; *Advantacare Health Partners, L.P. v. Access IV,* 2004 WL 1837997 (N.D. Cal. 2004) at *4.

Page 12 - PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503-224-4100
503-224-4133 (facsimile)

502370.DOC.12502-001

Second, a court can adopt issue related sanctions, "striking a defense or deeming a fact as established" where the spoliation has tainted the evidentiary resolution of the issue. *Shepherd v. American Broadcasting Co. Inc.,* 62 F.3d 1469, 1478 (D.C. Cir. 1995); *Bayoil, S.A. v. Polembros Shipping Ltd.,* 196 F.R.D. 479, 482 (S.D. Tex. 2000). Third, a court can "exclude witness testimony proffered by the party responsible for destroying the evidence and based on the destroyed evidence. *See, e.g., Glover,* 6 F.3d at 1329; *Unigard,* 982 F.2d at 368-69; *Realnetworks, Inc., supra* at *5. Finally, the court can "instruct the jury that it may draw an inference adverse to the party or witness responsible for destroying the evidence." *See Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991), cert den'd, 503 U.S. 962 (1992). The court also may assess attorney's fees. *Chambers*, 501 U.S. at 45-46; *Advantacare Health Partners, L.P.* at *4. Factually specific, case-by-case analysis is necessary to determine the proper sanctions for spoliation of evidence. *See Unigard, supra,* 982 F.2d at 369.

In products liability lawsuits, spoliation of the component at issue is of huge significance. "After all, the importance of the device allegedly causing the injury as a physical item of evidence is critical: 'the physical items themselves, in the precise condition they were in immediately after the accident, may be far more instructive and persuasive to a jury than oral or photographic descriptions' (*Nally v. Volkswagen of America*, 405 Mass. 191, 198, 539 N.E. 2d 1017, 1021 [1989])." *Kirkland v. New York City Housing Authority*, 236 A.D. 2d 170, 175, 666 N.Y.S. 2d 609, 612 (N.Y. A.D. 1 Dept. 1997). <u>This is particularly true where claims of manufacturing errors are involved as in the case at bar</u>: "Unlike an action predicated on a defective product design . . . where the design might be evaluated and the defect proved circumstantially (citations omitted), the issue whether [defendant] was negligent in installing a gas connection cannot be determined without an actual inspection of that connection in context with the stove (citation omitted)." *Kirkland*, 236 A.D. 2d at 175-6, 666 N.Y.S. 2d. at 613. *Also see State Farm Fire & Cas. Co. v. Frigidaire*, 146 F.R.D. 160, 162-3 (N.D. Ill. 1992) ("'The

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

502370.DOC.12502-001

preservation of an allegedly defective product is of utmost importance in both proving and defending against a strict liability action . . . .   Moreover, any photographs taken are not a sufficient substitute for the [product] in its original post-fire condition."); *Flury v. Daimler Chrysler Corporation*, 427 F.3d 939, 946 (11th Cir. 2005) ("While [accident photographs and an accident report] has some value, we cannot ignore the fact that defendant was precluded [by destruction of the automobile] from obtaining much more reliable evidence tending to prove or disprove the validity of [expert's] statements . . . As noted by the Georgia Court of Appeals, 'the spoliation of critical evidence – for whatever reason – may result in trial by ambush.' *Bridgestone/Firestone*, 574 S.E. 2d at 927."); *National Grange Mutual Insurance Co. v. Hearth & Home, Inc.*, 2006 WL 5157694 (N.D. Ga. 2006) at *4 ("Although pictures can mitigate the loss of crucial evidence, they cannot act as a substitute for it. *Bridgestone/Firestone*, 574 S.E. 2d at 926."); *Unigard*, *supra*, 982 F.2d at 368 (upholding trial court exclusion of expert witness testimony of party which destroyed the heater at issue, where trial court found "destruction of key evidence renders a full defense impossible"); and *Glasforms, Inc., supra*, 2009 WL 1949124 at *10 (spoliation of product "renders a reliable determination of the cause of the [contamination manufacturing defect] difficult).

The Court's inherent power to sanction for spoliation must be exercised "with restraint and discretion," including "fashioning a sanction appropriate for the specific conduct abusive of the judicial process." *Advantacare Health Partners, L.P.*, *supra*, 2004 WL 1837997 at *4. Further, when choosing among possible sanctions "the Court should consider a sanction designed to: (1) penalize those whose conduct may be deemed to warrant such a sanction; (2) deter parties from engaging in the sanctioned conduct; (3) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (4) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party. (Citations omitted)." *Id.*

Page 14 - PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224 4100
503.224-4133 (facsimile)

502370.DOC.12502-001

As discussed below, the spoliation of the PFD in this case, specifically the alteration of the J1/PI connector of its IRU by and/or while under the custody and control of Avidyne, for which Avidyne bears responsibility, justifies the imposition of sanctions against Avidyne. And, the most appropriate and only adequate sanction under the circumstances involved here is dismissal of Avidyne's defenses and the issuance of default judgment of liability against Avidyne.

II.    **Avidyne is Responsible for the Spoliation of the PFD.**

As set forth in the Background Facts above, supported by the affidavits of John Bloomfield and Douglas Desjardins, the critical J1/PI connector of the IRU component of the PFD was substantially altered while in the possession or control of Avidyne's employee, outside the presence of plaintiff's counsel and expert, without the knowledge or consent of plaintiff or the Court, and in violation of the agreed upon protocol.   The alteration is obvious and documented by the photographs taken by Mr. Bloomfield.   The Avidyne employee, Kevin Flaherty, was the "trained personnel" who Avidyne insisted and the protocol provided be the only person disassembling and handling the IRU of the PFD – and either Mr. Flaherty himself made the alteration, or he permitted or failed to prevent someone else from altering the IRU, outside the presence of plaintiff's counsel and expert.   As Mr. Flaherty was Avidyne's employee, Avidyne bears full responsibility for the consequences of that spoliation of the IRU and PFD. The "failure to preserve the evidence is attributable to" Avidyne.  *See National Grange Mutual Insurance Co. v. Hearth & Home, Inc.*, 2006 WL 5157694 at *5 and *6 (N.D. Ga.) ("Due to the negligence of [National Grange's] expert and/or adjuster in failing to preserve the evidence, the court concludes that culpability rests with [National Grange].").

Page 15 -  PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-1133 (facsimile)

**III.**    **Dismissal of Avidyne's Defenses to Liability Issues is the Appropriate Sanction for its Spoliation of the PFD.**

Although a severe sanction, dismissal of the claims or defenses of the spoiling party is within the Court's discretion and appropriate when lesser sanctions would be inadequate. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991); *Realnetworks, Inc. v. DVD Corp. Control Ass'n, Inc.*, 2009 WL 1258970 at *5 (N.D. Cal. 2009); *Advantacare Health Partners, LP v. Access IV*, 2004 WL 1837997 at *5 (N.D. Cal. 2004). Where the spoiling party is the defendant, the dismissal of its defenses can properly consist of striking its answer and entering default judgment against it. *See Professional Seminar Consultants, Inc. v. Sino American Technology Exchange Council, Inc.*, 727 F.2d 1470, 1474 (9th Cir. 1984); *Advantacare Health, supra,* 2004 WL 1837997 at *5; *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.,* 594 F. Supp. 1443, 1456-57 (C.D. Cal. 1984); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). The Court may require proof in a default judgment hearing of any additional issues essential to the proof of plaintiff's claims, such as damages. *Wm. T. Thompson Co., supra* at 1456; *Au Bon Pain Corp., supra* at 65.

The Ninth Circuit has found dismissal is the appropriate sanction when other sanctions are not adequate to cure the prejudice to one party that results from the spoliation caused by the opposing party. *See, e.g., Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958-959 (9th Cir. 2006). As explained in *Leon*, "[t]he prejudice inquiry 'looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case.' *Wiltec Guam*, 857 F.2d at 604 (citation omitted). In *Anheuser-Busch* [*Anheuser-Busch v. Nat. Bev. Distribs*, 69 F.3d 337 (9th Cir. 1995)], we found prejudice when a party's refusal to provide certain documents 'forced Anheuser to rely on incomplete and spotty evidence' at trial. 69 F.3d at 354." *Id.* at 959. In *State Farm Fire and Cas Co. v. Broan Mfg. Co., Inc.*, 523 F. Supp. 2d 992, 998 (D. Ariz. 2007), the sanction of dismissal was imposed for spoliation of a fire scene as lesser sanctions "would still not cure" the prejudice resulting from

Page 16 - PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

502370.DOC.12502-001

being deprived of potentially critical evidence from the fire scene: The Arizona district court

explained further:

> "A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threatened to interfere with the rightful decision of the case." *Anheuser-Busch*, 69 F.3d at 353-54 (citations omitted). In essence, the origin and cause of the fire would be determined through expert witnesses. Defendant's experts have been deprived of the ability to determine whether the evidence would have supported their theory of the case. Prejudice was found in *Anheuser-Busch* when the suppression of documents "forced Anheuser to rely on incomplete and spotty evidence." *Id.* In this case, the destruction of the fire scene forces Defendant to rely on the evidence preserved by Plaintiff-the fan, the light fixture, the switch for the light and fan, and photographs of the fire scene. (Pl.'s Resp. to Spoliation Mot. 10-11.) As noted, evidence which might have supported Defendant's theories of causation were destroyed, and the secondary photographic evidence is incomplete. Although Defendant's expert was able to create a detailed report based on the evidence preserved from the fire scene, the spoliation in this case forces Defendant to "rely on incomplete and spotty evidence." *Anheuser-Busch,* 69 F.3d at 353-54. Not only is the evidence incomplete, but it is also limited to that which Plaintiff chose to preserve, and Defendant cannot conduct an independent investigation of the fire scene. The spoliation therefore threatens to interfere with the rightful decision of the case by preventing full development of the alternative theories of causation.

*Id.* at 997.[5]

*Atlantic Recording Corporation v. Howell*, 2008 WL 4080008 (D. Ariz. 2008) granted

the sanction of default judgment in a copyright infringement case, finding that without the

destroyed evidence the plaintiffs were unable to adequately examine the factual accuracy of the

spoiling party's defense, and further noting:

> [Plaintiffs'] remaining evidence . . . is tenuous and circumstantial . . . .     The prejudice to the court and to [plaintiffs] is irretrievable.
>
> Such circumstances demand the imposition of a default judgment against [the spoiling defendant] . . . . It will not suffice to impose a presumption that the evidence lost was damaging to [defendant]. The evidence destroyed here was so central to the allegations in this case that imposing such a presumption would effectively establish [defendant's] liability. Imposition of a default judgment is

---

[5]    *State Farm* also confirmed, in addition to considerations of prejudice from limiting the evidence available to the nonspoiling party, that requirements of "willfulness" for the sanction of dismissal to be proper is met when, as with the case of Avidyne, the party had "notice that the evidence was potentially relevant to the litigation before it was destroyed. *Leon* 464, F.3d at 959;" and that considerations of expeditious resolution of the litigation and management of the Court's docket are satisfied when the spoliation of the evidence "has obscured the factual predicate of the case" (*i.e.* in the instant case whether the product defect caused the crash), and required Court resources to address the spoliation issue. *Id.* at 996-997.

Page 17 - PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503-224-4100
503-224-4133 (facsimile)

502370.DOC.12502-001

therefore the only appropriate sanction, both for its deterrent effect and to remedy the prejudice inflicted on the [plaintiffs] and on the court."

*Id.* at *2-3.

*Also see Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 946 (11th Cir. 2005) (approving a dismissal sanction in an automobile air bag product defect case, despite the fact that the condition of the spoiled evidence was depicted in photography and reports, because "we cannot ignore the fact that defendant was precluded from obtaining much more reliable evidence tending to prove or disprove the validity of [spoiling party's expert's] statements.");[6] *Allstate Insurance Company v. Sunbeam Corporation*, 53 F.3d 804 (7th Cir. 1995) (approving dismissal in gas grill fire products liability case, where evidence not preserved included part of the grill which was alleged to cause the fire, which "prejudiced Sunbeam's efforts to present a defense that the fire was caused by some source other than its grill." *Id.* at 807); and *State Farm Fire and Cas. v. Frigidaire*, 146 F.R.D. 160 (N.D. Ill. 1992) where in granting the sanction of dismissal in dishwasher fire products liability case, the court said:

> [P]reservation of an allegedly defective product is of utmost importance in both proving and defending against a strict liability action. Accordingly, a plaintiff is obligated, under the penalty of sanctions, to preserve the allegedly defective product which it knew, or reasonably should have known, would be material in the contemplated product liability action. * * *
>
> [Plaintiff's] conduct with regard to the destruction of the dishwasher -- the product it alleges caused the fire -- warrants sanction. * * * Accordingly, in an effort to achieve fair and orderly adjudication, we grant [defendant's] motion to dismiss [plaintiff's] complaint.

*Id.* at 162-63 (citations and internal quotations omitted).

Furthermore, the sanction of a default judgment is particularly appropriate where the party's spoliation was purposeful and the "[i]mposition of a lesser sanction would only reward

---

[6]    Courts have routinely recognized that photographs are poor substitutes for actual physical examinations of evidence. *Flury, supra,* 427 F.3d at 946 (Dismissal proper where defendants were forced to defend products liability case based on reports and photographs instead of more reliable physical evidence); *State Farm*, 523 F. Supp. 2d at 997 (Dismissal warranted where defendants were forced to defend action based only on photographs and physical evidence plaintiff preserved); *Nat'l Grange Mut. Ins. v. Hearth & Home, Inc.,* 2006 WL 5157694 at *1, *4 (N.D. Ga. 2006).

Page 18 - PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224.4133 (facsimile)

502370.DOC.12502-001

[the spoiling party] for its misconduct in this litigation." *Wm. T. Thompson Co. v. General Nutrition Corporation, Inc.*, *supra*, 593 F. Supp. at 1456. And, the default judgment/dismissal sanction also is justified when a lesser sanction, such as an evidence preclusion order, were to be granted but would virtually compel a directed verdict." *Id.* at 1456.

In the instant case, the spoliation of evidence by Avidyne has deprived plaintiff and her experts from fully examining, testing and presenting to the jury the PFD in the condition as existed before the spoliation, as attested to by plaintiff's experts Donald Sommer and John Bloomfield in their affidavits filed herewith. Plaintiff's primary expert on liability, Donald Sommer, had no opportunity to see the subject PFD before Avidyne's spoliation – in fact he was not retained until the latter part of 2008. Sommer Aff. ¶¶ 6-7. Although he reviewed the pre-spoliation photos of the PFD taken by John Bloomfield, from which it was obvious that the J1/P1 connector was unfastened on one side, Mr. Sommer was prevented by the spoliation from ascertaining other critically important conditions. Sommer Aff. ¶¶ 6-8. After the spoliation, it could not be determined whether the other end of the connector was also unfastened, which Mr. Sommer could have determined had Avidyne not altered the connector. Sommer Aff. ¶¶ 6-8 and 11. Whether or not the connector was unfastened on both sides was of critical importance, because if disconnected on both sides it would have moved around much more freely and easily in response to the aircraft's vibration during the accident flight, impairing or preventing its functionality. *Id.* at ¶ 11 and Bloomfield Aff. ¶ 32. Avidyne's spoliation also forever prevented plaintiff and her experts from thereafter conducting vitally important electrical continuity tests on the connector – both with both sides partially or fully disconnected, or with only one side partially or fully disconnected - in the condition existing for the J1/P1 connector prior to its spoliation by Avidyne. Sommer Aff. ¶¶ 8, 12, and 13. Bloomfield Aff. ¶¶ 1. 34. Mr. Sommer also was unable to test the unit functionally in its pre-spoiled condition. Sommer Aff. ¶ 13.

Mr. Sommer did test an exemplar, but as he and Mr. Bloomfield explain, exemplar tests can only be used "for an approximation as a level of disconnect required for electrical

Page 19 -  PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

502370.DOC.12502-001

discontinuity will vary from J1/P1 connectors coming from different IRUs that have been used in aircraft operation and exposed to different environmental conditions. The reason is that electrical continuity is highly variable based on the amount of oxidation or corrosion on the connector pins, contamination caused by foreign material being introduced and other environmental factors. The level of corrosion and oxidation that would occur in connector pins, in turn, is highly variable depending on the operating conditions and environment the particular IRU has been exposed to during its life, and whether during maintenance the connector had ever been pulled out or pushed together, which removes oxidation." *Id. at* ¶ 14; Bloomfield Aff. ¶ 31. His affidavit goes on to explain that because of Avidyne's spoliation, "there is no way to determine the level of oxidation that existed on the connector pins prior to this alteration." *Id.* at ¶¶ 14-17. Similar consequences, as well as the further problem created by the spoliation altering the condition of the individual crimps for the nine separate wires contained in the J1/P1 connection that also affect electrical continuity were also attested to in the Affidavit of John Bloomfield at ¶¶ 30 to 31. As Mr. Sommer concludes, his "investigation has been compromised" and "important information that could have been ascertained from this post-accident position . . . was lost forever." Sommer Affidavit, ¶¶ 17, 20. Mr. Bloomfield also attests that the spoliation has resulted in the permanent loss of important evidence. Bloomfield Aff. ¶¶ 29-31. Photographs cannot document the extent and effect of oxidation, corrosion or crimping. Bloomfield Aff. ¶¶ 30-32. Avidyne's expert, Dr. James Knox, acknowledged in his deposition that oxidation and bad crimping can prevent electrical connectivity. Desjardins Aff. ¶ 29, Ex. 7 (Knox Deposition, pp. 119-121, 170.

Thus, under the circumstances present in this case, Avidyne's spoliation has deprived plaintiff and her experts of critical evidence central to her product liability claims. Available photographs are no substitute for the physical component itself and the ability to examine it thoroughly, test it, and show it to the jury in its nonspoiled condition – both as to plaintiff's design defect claims but even more so as to plaintiff's mismanufacture claims. Further, the

Page 20 - PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

502370.DOC.12502-001

available photographs are "incomplete and spotty," with none taken which can show whether or not the other side of the connector was fastened, and none that can identify the full extent of and consequence for the proper operation of the PFD of the oxidation, corrosion and crimping conditions present in the unspoiled IRU. Plaintiff has been left with circumstantial evidence regarding the IRU of the PFD, and has been deprived of the much more reliable and persuasive evidence which the unspoiled PFD could have provided. Lesser sanctions than dismissal/default judgment cannot cure the prejudice to plaintiff from being able to fully investigate, develop, present and prove her case. Under the legal authorities referred to above, dismissal/default judgment is the appropriate and required sanction.

## IV.    In the Alternative, the Lesser Sanctions Requested by Plaintiff Should be Imposed.

The types of lesser sanctions requested by plaintiff have been granted in appropriate cases.

Under its inherent power, a court "may impose the sanctions of striking a defense or deeming a fact as established when 'a preponderance of the evidence establishes that a party's misconduct has tainted the evidentiary resolution of the issue.' *Shepherd v. American Broadcasting Co. Inc.*, 62 F.3d 1469, 1478 (D.C. Cir. 1995) . . . . *See also Morocco v. General Motors Corp.*, 966 F.2d 220, 225 (7th Cir. 1992) (employing the term 'issue related sanction')." *Bayoil, S.A. v. Polembros Shipping Ltd.*, 196 F.R.D. 479, 482 (S.D. Tex. 2000).

Excluding the testimony of the experts and other witnesses for the spoiling party also is a sanction within the court's discretion. *See, e.g., Unigard Security Insurance Company v. Lakewood Engineering & Manufacturing Corporation*, 982 F.2d 363, 369 (9th Cir. 1992), citing also *Fire Ins. Exch. v. Zenith Radio Corp.*, 747 P.2d 911, 914 (Nev. 1987) for the proposition that "exclusion of expert testimony for plaintiff's destruction of evidence, rather than imposition of a rebuttable presumption, was not an abuse of discretion because '[a]ny adverse presumption which the court might have ordered as a sanction for the spoliation of evidence would have paled

Page 21 - PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503-224-4100
503-224-4133 (facsimile)

502370.DOC.12502-001

next to the testimony of the expert witness.'"  Emphasis added.  Judge Frye in *BTO Logging, Inc. v. Deere & Company*, 174 F.R.D. 690 (D. Or. 1997), a product liability action for the loss due to fire of a logging harvester owned by BTO, excluded "any testing by BTO's experts as to the cause of the fire which is based on their examination of the logging harvester."  The Court noted:

> There is no evidence of bad faith on the part of BTO; however, BTO is at fault for [defendant] being precluded from having its expert witness examine the logging harvester.  Rowland is prejudiced by this in that its expert witness is forced to rely on the photographs taken by BTO's expert and the parts retained by BTO . . . .  The court concludes that a rebuttable presumption in Rowland's favor does not cure the prejudice . . . ."

*Id.* at 693-694.  Also *see National Grange Mutual Insurance Co. v. Hearth & Home, Inc.*, *supra*, 2006 WL 5157694 at *7 (sanction excludes "any testimony relating to any observations made [at the inspection] and any expert opinions relating to those observations.")  And *see R.A. Siegel Company v. Bowen*, 539 S.E.2d 873, 877-878 (Ga. 2000) which in excluding the spoiling party from offering "any evidence of any kind concerning the condition" of an automobile it permitted to be destroyed, even though all parties had the opportunity to inspect the vehicle before its destruction, the court said:

> We agree that the expert evidence and photographs [taken by both parties' experts] are mitigating factors.  However, this argument fails to address the loss of the tangible evidence for the jury's viewing, which evidence might have supported the plaintiffs' argument and rebutted the defendants' argument about the cause of the collision . . . .  While [a rebuttable] presumption might remedy the prejudice suffered in the conflicting expert testimony, it does not address the loss of the ability of the jury to review the damage to the car.

For reasons similar to those quoted from the preceding cases, plaintiff does not believe rebuttable presumptions would be adequate sanctions.  However, numerous cases have approved their use as sanctions for spoliation where appropriate and sufficient.  *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, 2009 WL 1949124 (N.D. Cal.) at *10) stated:

> The Court has broad discretion to fashion, on a case-by-case basis, an appropriate adverse inference jury instruction for spoliation.  *Unigard*, 982 F.2d at 367; *see Akiona*, 938 F.2d at 161 (stating that the trier of fact may draw an adverse inference from the destruction of evidence relevant to the case).  In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence

Page 22 - PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

502370.DOC.12502-001

goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it. *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.* 682 F.2d 802, 806 (9th Cir. 1982); *see Nat'l Ass'n of radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987) ("Where one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court must draw the strongest allowable inferences in favor of the aggrieved party.").

The rule permitting a jury to draw an adverse inference is based on two rationales. *Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 981 (9th Cir. 2009) (citing *Akonia*, 938 F.2d at 160-61). The "evidentiary rationale" recognizes the common sense proposition that a party who destroys material relevant to litigation is more likely to have been threatened by the item than someone who does not destroy it. *Akonia*, 938 F.2d at 161. The "deterrence rationale" presumes that an adverse inference will deter parties from destroying relevant evidence before it can be introduced at trial. *Id.*

*Also see Glover v. BIC Corp.*, 6 F.3d 1318, 1329-1330 (9th Cir. 1993) ("[a] trial court also has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for the behavior . . . . [A] finding of bad faith is not a prerequisite to this corrective procedure . . . . [A] finding of bad faith will suffice, but so will simple notice of 'potential relevance to the litigation.'" Citations omitted.

Given the spoliation by Avidyne in the instant case – to the likely most important component of the aircraft in this litigation – when Avidyne knew full well of its potentially huge relevance to the litigation – and where "bad faith" and misconduct also likely were involved – the "strongest allowable inference" should be instructed, if that "lesser" sanction of the available sanctions is to be used.

## V.    Plaintiff Should be Awarded Attorneys' Fees.

The Court has the discretion to, and should, award plaintiff attorneys' fees and related costs. *See, e.g., Realnetworks, Inc. v. DVD Copy Control Association*, 2009 WL 1258970 (N.D. Cal.) at *14 (awarding attorneys' fees and related costs "for pursuing the evidence of spoliation . . . and for bringing this part of the sanctions motion."); *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, 2009 WL 1949124 (N.D. Cal.) at *11 (awarding attorneys' fees and costs for "developing the record on spoliation, and time spent researching and preparing this motion";

Page 23 - PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (facsimile)

502370.DOC.12502-001

*Konrath v. Amphitheater Unified School Dist. No. 10*, 2007 WL 2809026 at *9 (awarding reasonable attorneys' fees for the preparation and completion of the pleadings and argument regarding the motion for sanctions for spoliation of evidence).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for sanctions should be granted and plaintiff should be awarded reasonable attorneys' fees and costs.

Dated this 31st day of July, 2009.

> Douglas P. Desjardins (*pro hac vice*)
> CLAPP, DESJARDINS & ELY, PLLC
>
> and
>
> Robert B. Hopkins
> LANDYE BENNETT BLUMSTEIN LLP
>
> By:_____s/ Robert B. Hopkins_____
> Robert B. Hopkins, P.C., OSB #73143
> Douglas P. Desjardins
> *Of Attorneys for Plaintiff*

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224.4133 (facsimile)

502370.DOC.12502-001